UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY HARDISON,

                        Plaintiff,          Civil Action No. 14-10939

v.                                           Honorable Judith E. Levy
                                                   Magistrate Judge David R. Grand

CYNDI MURPHY, KAREN
HORTON, and RICHARD CADY,

                        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT THE
MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [15]**

      Before the Court is the Motion for Summary Judgment filed on September 15, 2014, by Defendants Cyndi Murphy, Karen Horton, and Richard Cady (collectively the "MDOC Defendants"). (Doc. #15). *Pro se* plaintiff Anthony Hardison ("Hardison"), an incarcerated person, submitted two documents in response to this motion. (Docs. #17, 19). No reply was filed. An Order of Reference was entered on July 15, 2014, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #8).

      Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

      For the reasons set forth below, **IT IS RECOMMENDED** that the MDOC Defendants' Motion for Summary Judgment [15] be **GRANTED**.

**II.    REPORT**

      **A.    Background**

Hardison is a State of Michigan prisoner who, at all relevant times, was confined at the

G. Robert Cotton Correctional Facility in Jackson, Michigan ("JCF").[1] (Doc. #1 at ¶1). He brings this civil rights action pursuant to 42 U.S.C. §1983 against three individuals[2] employed by the Michigan Department of Corrections ("MDOC"). Specifically, Hardison alleges that Registered Nurse Cyndi Murphy ("RN Murphy") and Corrections Officer Karen Horton ("CO Horton") violated his Eighth Amendment right to be free from cruel and unusual punishment when they were deliberately indifferent to a serious medical need. And, Hardison alleges that Resident Unit Manager Richard Cady ("RUM Cady") violated his First Amendment right to free speech when he transferred him to the Lakeland Correctional Facility ("LCF") in retaliation for his filing of grievances. Hardison sues the MDOC Defendants in their personal and official capacities, seeking compensatory and punitive damages and declaratory and injunctive relief.

**B.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo*

---

[1] It appears that Hardison subsequently was transferred to the Lakeland Correctional Facility in Coldwater, Michigan, and currently is housed at the Oaks Correctional Facility in Manistee, Michigan. Hardison asserts, however, that the events at issue in the complaint occurred when he was incarcerated at JCF. (Doc. #1 at ¶1).

[2] On July 8, 2014, the District Court entered an Order of Partial Dismissal, dismissing Hardison's claims against the other named defendants: Randall Haas, Ken Ryan, Deputy Warden Artis, and Assistant Resident Unit Supervisor Kik. (Doc. #7).

*v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.     Analysis**

In their motion, the MDOC Defendants argue that summary judgment is appropriate on Hardison's Eighth Amendment claims against RN Murphy and CO Horton because the evidence establishes that they were not deliberately indifferent to his serious medical needs. (Doc. #15). They further argue that Hardison's First Amendment claim against RUM Cady fails because his transfer from JCF to LCF was not an "adverse action" within the meaning of the law; and, even if it was, there is no evidence that this transfer was motivated by Hardison's protected activity. (*Id.*). Hardison filed two documents in response to the MDOC Defendants' motion, though neither one contains any substantive information.[3] Nevertheless, the Court will address the

---

[3] On October 15, 2014, Hardison filed an "Answer" to the MDOC Defendants' motion, though in it Hardison merely asserts that he "will submit a brief in support of [his] Answer…This [brief] is forthcoming and must be done correctly as it involves clear case law that must be further

3

MDOC Defendants' arguments in turn.[4]

                1.     *Summary Judgment is Appropriate on Hardison's Eighth Amendment Claims against Murphy and Horton*

                      a.     *General Legal Standards*

Hardison first asserts that the failure of RN Murphy and CO Horton to provide timely and adequate medical care violated his rights under the Eighth Amendment. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The Sixth Circuit has succinctly explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference to his serious medical needs:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy

---

researched…." (Doc. #17). The Court treated this as a request for an extension of time to respond to the MDOC Defendants' motion, and granted Hardison until November 14, 2014, to do so. (Doc. #18). On December 5, 2014 the Court clerk received and docketed Hardison's undated "Motion for the Court to Dismiss the [MDOC Defendants'] Motion for Summary Judgement [sic] [and] for Judgement [sic] to be Entered in Favor of Plaintiff for Defendants [sic] Failure to Raise a Valid Defense." (Doc. #19). Like his first "response," this one also contains no substantive information, and simply asserts (paradoxically) that he is entitled to a judgment in his favor and for the case to proceed to a jury trial because he "has stated valid claims in the complaint citing violations of [his] constitutional rights …[and that] the defendants [failed] to raise a valid defense…." (*Id.*).

[4] The MDOC Defendants also assert that Hardison's claims are barred by qualified immunity. Because the Court is recommending that summary judgment be granted in the MDOC Defendants' favor on other grounds, it need not address the merits of this argument.

> the subjective component, the defendant must possess a sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish. Put another way, [a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it. Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (internal quotations and citations omitted). Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, the official must recognize the potential for harm to the inmate and must fail to act to prevent that harm.

>> b. *Hardison Fails to Raise a Question of Material Fact as to Whether RN Murphy and/or CO Horton were Deliberately Indifferent to His Serious Medical Needs*

> (1) RN Murphy

In his complaint, Hardison makes two allegations against RN Murphy – one pertaining to her alleged denial of orthopedic shoes, and another regarding her alleged denial of a medical detail. As to the first issue, Hardison alleges that, on December 12, 2012, he filed a grievance against RN Murphy for denying him "proper medical care" regarding his alleged need for orthopedic shoes due to being "extremely obese." (Doc. #1 at ¶¶16, 17). He further asserts that the orthopedic shoes he was provided were "grossly inadequate" and caused him severe pain and worsening of his condition. (*Id.* at ¶16).

RN Murphy submitted an affidavit in support of the MDOC Defendants' motion, in which she indicates that she responded to Hardison's grievance regarding the orthopedic shoes,

5

stating "that he had accepted the shoes that were provided, so per policy he could not be provided more shoes for 6 months." (Doc. #15 at Ex. 1, ¶3). RN Murphy further avers that, "The type of shoes that [Hardison] was to receive were ordered by Corizon, the insurance provider, and the quartermaster is the one who orders and dispenses shoes." (*Id.*). According to RN Murphy, as a registered nurse, she had "no authority or responsibility to order [Hardison] different or additional shoes." (*Id.* at ¶4). RN Murphy further affirms that her entire involvement with respect to this issue consisted of "answering the request for new shoes as addressed in his kite." (*Id.* at ¶5). She also "set him up for the Nurse Sick Call addressing his complaint that the shoes were damaging his feet." (*Id.*).

With respect to the second issue, Hardison alleges that he was taking "water pills" which required him "to urinate very frequently," and, as a result, he submitted a health care kite on June 7, 2013, requesting a "medical detail." (*Id.* at ¶¶18, 20). According to Hardison, RN Murphy responded to this kite "in haste" and:

> . . . made a[n] incompetent decision not to treat plaintiff completely and rather tried to justify her not treating plaintiff with and I quote "You can discuss this with the [medical provider] at the upcoming apt. In the meantime, the count times are always the same. Go to the bathroom right before the count time is to begin."

(*Id.* at ¶22). Hardison further claims that because of RN Murphy's failure to issue him a medical detail, he has been forced to live with unspecified "life threatening and irreparable injuries." (*Id.*). In her affidavit, however, RN Murphy indicates that Hardison saw a medical provider before and after this request, and he had never been authorized to have a "continuous use of the bathroom" detail because he did not qualify for one. (Doc. #15 at Ex. 1, ¶6). According to RN Murphy, only medical providers (not registered nurses) can order this type of medical detail. (*Id.*). In his responses to the MDOC Defendants' motion, Hardison does not challenge, let alone refute any of the statements made by RN Murphy in her affidavit, regarding either the orthopedic

6

shoes or the medical detail.

Even assuming that Hardison's need to frequently use the bathroom and his need for orthopedic shoes were "sufficiently serious" to satisfy the objective component of an Eighth Amendment claim, Hardison has failed to establish the subjective element of such a claim against RN Murphy. As set forth above, to establish liability under the high deliberate indifference standard, actual knowledge of harm is required. "It is insufficient for a plaintiff to allege that there existed a danger that an official should have been aware of." *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). Rather, an official "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

In this case, Hardison has not raised a material question of fact that RN Murphy was deliberately indifferent. Although Hardison's kites may have made her aware of his medical needs, RN Murphy's affidavit makes clear that she had no authority to issue a medical detail (which had to be done by a medical provider) or order new orthopedic shoes. (Doc. #15 at Ex. 1, ¶¶4, 6). There is no evidence that RN Murphy interfered with Hardison's ability to obtain either of these items from the staff responsible for those accommodations. Indeed, as noted above, Hardison does not dispute RN Murphy's averments that she facilitated a nurse sick call visit so he could seek a proper review of his footwear needs, or that he received medical attention with respect to his claimed need for continuous access to a bathroom. (Doc. #15 at Ex. 1, ¶¶5-6). At

most, RN Murphy's decision not to pursue these matters more aggressively was negligent; however, mere negligence is insufficient to establish an Eighth Amendment violation. *See Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 544 (6th Cir. 2003). For these reasons, Hardison cannot succeed on his Eighth Amendment claim against RN Murphy.

### (2) CO Horton

With respect to CO Horton, Hardison alleges only that, on one occasion, he asked to use the bathroom, but CO Horton told him that he could not.[5] (Doc. #1 at ¶18). Hardison further alleges that CO Horton's denial of this request constituted "harassment." (*Id.* at ¶22). In her affidavit, however, CO Horton indicates that Hardison made this request during "count time," and that "[a]ll prisoner movement in all areas of the facility shall cease during formal count." (Doc. #15 at Ex. 2, ¶¶3-4). CO Horton further avers that she told Hardison that "he must have a bathroom detail to come out to use the bathroom during count," and that he did not. (*Id.* at ¶¶3, 5). She denies harassing Hardison and states that she knew nothing about his medical condition at the time of the events at issue. (*Id.*). In his responses to the MDOC Defendants' motion, Hardison does not contradict or rebut any of the statements made by CO Horton in her affidavit.

Hardison has failed to meet the subjective prong of the deliberate indifference standard with respect to CO Horton. Indeed, there is no evidence that CO Horton had any knowledge of Hardison's medical needs whatsoever. CO Horton denies having any knowledge of Hardison's medical condition at the time of the events in question (*Id.* at ¶3), and Hardison has not disputed

---

[5] Courts have recognized that "where a prisoner is briefly denied access to a toilet such deprivation is not sufficiently serious to implicate the Eighth Amendment." *Johnson v. Sharp*, 2012 WL 7809846, at *3 (W.D. Mich. Dec. 5, 2012) (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309-10 (6th Cir. 1999) (allegations that prisoner was denied use of a toilet for two separate 8-hour periods over two days did not state a claim for violation of the Eighth Amendment); *Merriweather v. Jenkins*, 2012 WL 3929903, at *3 (W.D. Mich. Aug. 14, 2012) ("the one-time denial of Plaintiff's request to use the toilet is insufficient, by itself, to state a claim under the Eighth Amendment")).

that assertion. While CO Horton acknowledges that Hardison asked to go to the bathroom during count time – a critical time during which all prisoner movement must cease – she affirmatively states that he did not have a medical detail that would permit him to use the bathroom during this time. (*Id.* at ¶¶3, 5). Again, Hardison does not assert otherwise; nor could he, as he admits he sought a "medical detail" the day <u>after</u> the incident. (Doc. #1 at ¶21). For all of these reasons, Hardison cannot succeed on his deliberate indifference claim against CO Horton.[6] *See, e.g., Mattox v. Edelman*, 2013 WL 3936424, at *3 (E.D. Mich. July 30, 2013) (deliberate indifference claim fails where defendant has no actual knowledge of the plaintiff's serious medical need) (citing *Farmer*, 511 U.S. at 836).

### 2. Summary Judgment also is Appropriate on Hardison's First Amendment Retaliation Claim against Cady

In his complaint, Hardison alleges that RUM Cady retaliated against him for "filing grievances against healthcare and officers and RUM Cady himself" by transferring him from JCF to LCF. (Doc. #1 at ¶¶24-25). Hardison further alleges that it was RUM Cady's "performance of security screen" that set into motion his transfer to LCF and "thus, RUM Cady took adverse action against plaintiff, even though RUM Cady's action simply made plaintiff eligible for a routine transfer." (*Id.* at ¶27).

In his affidavit, however, RUM Cady denies having knowledge of any grievances that Hardison filed against him, saying that such grievances "would have been investigated and responded to by other staff." (Doc. #15 at Ex. 3, ¶3). Nor does RUM Cady recall investigating any grievances allegedly filed by Hardison against others. (*Id.*). RUM Cady further avers that his job duties did not (and do not) include any transfer duties, and he has no say in whether a

---

[6] Additionally, Hardison acknowledges that he was provided a "urine bottle and cap" by the grievance coordinator. (Doc. #1 at ¶23). He does not allege that he suffered any medical consequences from not being permitted to leave his cell during count time.

prisoner is transferred. (*Id.* at ¶4). RUM Cady also denies Hardison's allegation that his "performance of security screen" "set in motion" Hardison's transfer. (*Id.* at ¶5). According to RUM Cady, the March 26, 2013 security screen he completed – nearly five months before Hardison was transferred – was completed as an "annual review," which is required by policy. (*Id.*). Moreover, RUM Cady states that, according to MDOC records, Hardison was transferred from JCF to LMF as a Level II security prisoner, "a lateral transfer." (*Id.* at ¶6). In his responses to the MDOC Defendants' motion, Hardison does not challenge or rebut any of RUM Cady's assertions.

Under Sixth Circuit law, to establish a claim for First Amendment retaliation, the plaintiff must show that: (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011).

Even assuming that Hardison's filing of grievances constitutes protected activity under the First Amendment,[7] he has not raised a material question of fact as to whether he suffered an adverse action when he was transferred from JCF to LCF. Courts have held that, "As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). In other words, "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a person of ordinary firmness from continuing to engage in protected conduct."

---

[7] *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

*Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). Only when a transfer results in more restrictions – such as an increased security level or limited access to the courts – does it potentially rise to the level of an adverse action. *See, e.g., Siggers-El*, 412 F.3d at 702 (finding that transfer could constitute adverse action where plaintiff "also suffered a number of foreseeable consequences that inhibited [his] ability to access the courts"); *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (transfers that "result in more restrictions and fewer privileges for prisoners are considered adverse"); *King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012) (adverse action where prison officials increased the plaintiff's security level from II to III by transferring between prisons). Here, Hardison's claim is based solely on his transfer to a different prison (Doc. #1 at ¶27); he has not argued that this transfer limited his access to the courts or that it resulted in an increase in his security level. Indeed, the undisputed evidence before the Court is that his security level remained the same. (Doc. #15 at Ex. 3, ¶6). For these reasons, Hardison has not established that he suffered an adverse action.

Moreover, Hardison has failed to raise a genuine issue of material fact as to whether there is a causal connection between his protected conduct and his transfer to LCF. "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state … a claim under §1983." *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted). RUM Cady states in his sworn affidavit that he had no say in whether Hardison was transferred. (Doc. #15 at Ex. 3, ¶4). And, generally speaking, a causal connection cannot be established when the accused prison official was not the decision-maker with regard to the alleged act of retaliation. *See McCaskill v. Dettloff*, 2014 WL 7403857, at *4 (E.D. Mich. Dec. 30, 2014). Although Hardison alleges that RUM Cady "set in motion" his transfer by completing a security screen, RUM Cady denies this allegation, stating that the security screen

11

he completed – almost five months before Hardison's transfer, it bears mentioning[8] – was simply completed as an "annual review," which is required by policy.  (Doc. #15 at Ex. 3, ¶5).  Finally, RUM Cady has denied having knowledge of any grievances filed by Hardison (*Id.* at ¶3) – a fact that Hardison has failed to rebut – further evidencing a lack of causal connection.

For all of these reasons, there is insufficient evidence to support Hardison's allegation that RUM Cady completed the security screen for the purpose of instigating a transfer and therefore retaliating against him.  Consequently, summary judgment is appropriate on Hardison's First Amendment retaliation claim against RUM Cady.

### III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the MDOC Defendants' Motion for Summary Judgment [**15**] be **GRANTED**.

Dated: February 17, 2015                                    s/David R. Grand
Ann Arbor, Michigan                                         DAVID R. GRAND
                                                            United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will

---

[8] The lack of temporal proximity between completion of the security screen (in March 2013) and Hardison's transfer (in August 2013) is further evidence that RUM Cady's actions were not retaliatory in nature.  *See Mosholder v. Barnhardt*, 2010 WL 5559406, at *8-12 (E.D. Mich. Feb. 12, 2010).

be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 17, 2015.

                s/Eddrey O. Butts
                EDDREY O. BUTTS
                Case Manager